1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12

DEVYN SOLO, By and Through Her
Mother Rosalind Solo; ROSALIND
SOLO,

Plaintiffs,

v.

AMERICAN ASSOCIATION OF
UNIVERSITY WOMEN;
AMERICAN ASSOCIATION OF
UNIVERSITY WOMEN OF THE
STATE OF CALIFORNIA, INC.;
REGENTS OF THE UNIVERSITY
OF CALIFORNIA; DOES 1 Through
10, Inclusive,

Defendants.

CASE NO. 15cv1356-WQH-JMA

ORDER

13
14
15
16
17
18

HAYES, Judge:

19
20

The matter before the Court is the motion to compel arbitration and stay

21

proceedings pending the outcome of arbitration (ECF No. 11) filed by Defendant

22

American Association of University Women of the State of California and joined by

23

Defendant American Association of University Women.

## I.  Background

24
25

On June 21, 2015, Plaintiffs Devyn Solo, by and through her mother Rosalind

26

Solo, and Rosalind Solo initiated this action by filing a Complaint against Defendants

27

American Association of University Women ("AAUW"), American Association of

28

University Women of the State of California, Inc. ("AAUW-CA"), and Regents of the

University of California.  (ECF No. 1).  The Complaint alleges that Plaintiff Devyn

Solo was denied access to Defendants' facilities, programs, and services in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Unruh Civil Rights Act, California Civil Code §§ 51-54.  The Complaint alleges false or reckless reporting of alleged child abuse under California Penal Code § 11172(a), and seeks declaratory relief, injunctive relief, and damages.

On August 31, 2015, Defendant AAUW filed an answer.  (ECF No. 5).

On October 30, 2015, Defendant AAUW-CA filed the motion to compel arbitration and request to stay proceedings pending outcome of arbitration.  (ECF No. 11).  On December 9, 2015, Defendant AAUW filed a notice of joinder to the motion to compel.  (ECF No. 14).  On January 11, 2016, Plaintiffs filed a response in opposition to the motion to compel arbitration (ECF No. 17) and a response to the notice of joinder (ECF No. 18).  On January 12, 2016, Plaintiffs filed "Corrected Exhibits 1-2" in response to the motion to compel.  (ECF No. 19).  On January 15, 2016, Defendant AAUW filed a reply.  (ECF No. 20).  On January 18, 2016, Defendant AAUW-CA filed a reply.  (ECF No. 21).

On May 5, 2016, the Court heard oral argument on the motion to compel arbitration.

## II.  Allegations of the Complaint

Plaintiffs allege that "AAUW-CA is a branch or affiliate of defendant AAUW." *Id.* ¶ 6.  "Plaintiffs are informed and believe, and thereon allege, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, Defendants and Does 1-10 (collectively, 'Defendants'), each acting as the agent for the other, with legal authority to act on the other's behalf.  The acts of any and all Defendants were in accordance with, and represent the policies or practices of Defendants AAUW, AAUW-CA and the University.  All Defendants gave consent to, ratified, and/or authorized the acts alleged herein of each of the remaining Defendants." *Id.* ¶ 9.

"AAUW-CA, under the overall direction and leadership of defendant AAUW,

operates 'Tech Trek,' a one-week summer science and math camp that defendants AAUW and AAUW-CA claim is 'designed to develop interest, excitement, and self-confidence in young women' due to enter the eighth grade." *Id.* ¶ 14. "All sleeping, eating, instructional, and recreational facilities are located at camps operated by defendant AAUW or its affiliate AAUW-CA in California." *Id.* ¶ 15. "[A]ll girls attend Tech Trek camps 'on scholarships provided by AAUW California branch members, working with participating middle schools in their area." *Id.* ¶ 17.

"Defendants' agreement pursuant to which the Tech Trek program operates on the campus of the University of California, San Diego, does not include any terms requiring that Defendants AAUW or AAUW-CA not discriminate against people with disabilities in violation of California or federal laws." *Id.* ¶ 18. "[A]t all times relevant . . . Rozanne Child was Camp Director or Co-Director of the Tech Trek program conducted by defendants at the University of California, San Diego." *Id.* ¶ 19.

Plaintiff Devyn Solo has cystic fibrosis. "As a result of her Cystic Fibrosis, Devyn takes digestive enzymes in pill form at home and school before snacks or meals. She also does pulmonary treatments . . . [that] are brief and can be self administered. . . . Treatments are usually done twice a day and take about 20 minutes." *Id.* ¶ 21. "She does not need adult assistance while doing her pulmonary treatments." *Id.* ¶ 22.

"[Plaintiff] Solo received a letter dated January 27, 2014, signed by [the] Tech Trek Coordinator of the 'AAUW Del Mar-Leucadia Branch.' . . ." *Id.* ¶ 23.

> The letter [stated] that Devyn had been "nominated to attend Tech Trek Science and Math Camp," "sponsored by the American Association of University Women (AAUW)." Defendants requested that parents complete and return a "Parent Certification" allowing their child to attend the camp if selected, and that girls complete a 2-page Camp Application and a one-page essay. . . .

*Id.* ¶ 23. "[B]ased on the application materials submitted, Defendants were fully aware that Devyn has Cystic Fibrosis." *Id.* ¶ 24. "Devyn was accepted to the 7-day Tech Trek camp based on her grades, application, essay, and interview. . . . Parents were asked to complete forms dealing with their child's medical history, a release form, transportation plan, and an attendance agreement form." *Id.* ¶ 26.

"Prior to the date of the camp, Devyn's mother spoke with Rozanne Child on the telephone and discussed the details of Devyn's medical condition and the minimal care she would need while at camp.  Rozanne Child assured Devyn's mother that there would be a nurse on staff 24/7, and that any needs of Devyn would be met." *Id.* ¶ 30.

Once at camp, Plaintiff Devyn Solo completed treatments in the nurse's office on the first evening at camp and the following morning.  On the morning of June 23, 2014, Plaintiff Devyn Solo's second day at camp, "Devyn's mother received a telephone message from camp director Rozanne Child [saying] that Devyn had to leave the camp and Ms. Child wanted Devyn's mother to come to the camp and pick Devyn up immediately." *Id.* ¶ 35. "Devyn's mother called Ms. Child back right away. . . . Ms. Child insisted that Devyn's needs were too complicated for her program to accommodate . . . ." *Id.* ¶ 35.

When Plaintiff Rosalind Solo picked Plaintiff Devyn Solo up from the camp, "Plaintiff [Rosalind] Solo told Ms. Child that kicking Devyn out of the camp was wrong . . . . Ms. Child repeated her earlier statement with words to the effect that 'that machine' was somehow too complicated for the camp program and that Plaintiff [Rosalind] Solo had somehow not been forthcoming about Devyn's Cystic Fibrosis. She said words to the effect that Devyn's treatments were disruptive to the camp program." *Id.* ¶ 37.

After Plaintiff Devyn Solo left camp, "her father called NBC 7 and a reporter . . . who then visited Devyn's home and interviewed Devyn and Plaintiff [Rosalind] Solo about Devyn's ejection from defendants' AAUW Tech Trek camp.  Shortly thereafter, a story about Devyn's experience . . . aired on NBC 7." *Id.* ¶ 40.

> [S]everal days after Devyn was ejected from defendants' camp, Tech Trek staff filed a retaliatory report with the San Diego Child Protective Services claiming that Devyn had recently suffered a physical injury to her face that may have been caused by her mother. . . . AAUW staff also falsely advised the San Diego Child Welfare Services that Devyn's mother Plaintiff Solo was a neglectful parent because she sent her daughter to camp while ill and did not warn the camp staff of Devyn's Cystic Fibrosis.

*Id.* ¶ 41. When the Plaintiffs were interviewed by a Child Welfare Services employee,

"[t]he Child Welfare Services employee shared with plaintiff [Rosalind] Solo that she felt the report of alleged abuse was malicious in nature.  The Child Welfare Services employee apologized to [Plaintiff Rosalind Solo] for having [to] go through an uncomfortable process, then left." *Id.* ¶ 43.

Plaintiffs allege violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the California Unruh Civil Rights Act, Civil Code §§ 51, 52, 54, 54.1, 54.2, and 54.3.  Plaintiffs allege that Defendants filed a retaliatory child abuse or neglect report in violation of California Penal Code § 11172(a).  Plaintiffs seek injunctive relief, declaratory relief, and damages.

**III.  Contentions of Parties**

Defendant AAUW-CA contends that Plaintiff Rosalind Solo, on behalf of Plaintiff Devyn Solo, signed a release form to allow Plaintiff Devyn Solo to attend Defendants' Tech Treck camp containing an arbitration agreement that is valid and enforceable under the Federal Arbitration Act ("FAA").  Defendant AAUW-CA contends that the arbitration agreement was "front-and-center, in bold, in a very simple two-page document" that was voluntarily signed by Plaintiff Rosalind Solo after Plaintiff Rosalind Solo had a meaningful opportunity to review it. (ECF No. 11-1 at 6).  Defendant AAUW-CA contends that the Court should order arbitration of Plaintiffs' claims and the case should be stayed until arbitration proceedings have been completed.

Plaintiffs contend that the arbitration agreement is unconscionable and unenforceable because the arbitration agreement lacked mutuality, the arbitration agreement was not open to negotiation, and the arbitration agreement did not include an express waiver of legal remedies to anti-discrimination statutes.  Plaintiffs contend that the arbitration agreement failed to provide any reference to the rules to be applied in arbitration and did not provide for the allocation of the costs of arbitration.  Plaintiff Rosalind Solo contends that she cannot afford the costs of arbitration.

**IV.  Discussion**

### A. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") "was enacted . . . in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Section 2 of the FAA provides, "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339 (internal citations and quotation marks omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (internal citation omitted).

"The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (internal quotation marks omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000).

Pursuant to section 4 of the FAA, a party may move for a district court order compelling arbitration:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in

such agreement.

9 U.S.C. § 4.  Pursuant to section 3 of the FAA, a party may move for a court order staying a federal action pending arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

### B.  Plaintiff's Agreement to the Arbitration Clause

Defendant AAUW-CA selected Plaintiff Devyn Solo to attend the week-long June 2014 Tech Trek camp "for free, with all costs paid for by the Del Mar / Leucadia branch" of AAUW-CA.  (Decl. of Linda Quinby ¶ 5).  Prior to Plaintiff Devyn Solo attending Tech Trek Camp, in April 2014, Rozanne Child, on behalf of Defendant AAUW-CA, mailed Plaintiff Rosalind Solo a packet of forms to review, sign, and return by June 1, 2014.   (Decl. of Rozanne Child ¶ 4-5, Ex. A).

One of the forms that Plaintiff Rosalind Solo was asked to sign and return was a registration release form ("Release Form").  The  two-page Release Form contains seven sections, each followed by a space for a parent or guardian of a Tech Trek camper to sign and date.  Plaintiff Rosalind Solo signed and dated each section of the Release Form.

The section of the Release Form entitled "Binding Arbitration" stated, "I agree to submit all legal actions resulting from my daughter's attendance at AAUW CA's Tech Treck Science & Math Camp to binding arbitration."  The arbitration provision is underlined and in bold font.  On the signature line directly underneath the arbitration provision, Plaintiff Rosalind Solo signed her name and wrote the date "5/5/14."  (ECF No. 11-1 at 3; ECF No. 11-2, Ex. B).

California has a "strong public policy in favor of enforcing arbitration agreements."  *Broughton v. Cigna Healthplans of California*, 21 Cal.4th 1066, 1074

(1999).  Consistent with this policy, "any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration."  *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1144 (2012).  Pursuant to California law, the "general rule" is that "one who signs an instrument which on its face is a contract is deemed to assent to all its terms.  An offeree "is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious."  *Windsor Mills v. Collins and Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972).

In this case, the "contractual nature" of the Release Form is "obvious."  *See Windsor Mills*, 25 Cal. App. 3d at 993.  Plaintiff Rosalind Solo signed and dated each section of the Release Form, including the arbitration provision.  However, "unconscionability remains a valid defense to a petition to compel arbitration."  *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 912 (2015).

**C. Unconscionability**

"Under the FAA savings clause, state law that arose to govern issues concerning the validity, revocability, and enforceability of contracts generally remains applicable to arbitration agreements."  *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quotation omitted).  "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . . ."  *Id.*  (quotation omitted).  "Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable."  *Id.* (citing *Armendariz Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000)).  "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Armendariz*, 24 Cal.4th at 114.  "[T]he party opposing arbitration has the burden of proving the arbitration provision is unconscionable."  *Higgens v. Superior Court*, 140 Cal. App.  4th 1238, 1249 (2006) (quotation omitted).

"An evaluation of unconscionability is highly dependent on context. . . . The doctrine often requires inquiry into the commercial setting, purpose, and effect of the

contract or contract provision." *Sanchez*, 61 Cal.4th at 911.  Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *Id.* at 910. "[U]nconscionability is concerned . . . with terms that are unreasonably favorable to the more powerful party."  *Id.* (quotation omitted).  "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement."  *Id.* at 912.  "As with any contract, the unconscionability inquiry requires a court to examine the totality of the agreement's substantive terms as well as the circumstances of its formation to determine whether the overall bargain was unreasonably one-sided."  *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1146 (2013).

### 1. Substantive Unconscionability

Plaintiffs contend that the arbitration agreement is substantively unconscionable because it applies only to claims raised by campers arising out of their participation in Tech Trek Camp and does not compel Defendants to arbitrate any claims Defendants may bring against campers.  Plaintiffs contend that Defendant AAUW-CA may bring legal claims against campers and their parents for defamation, assault, or theft or destruction of property, as well as claims arising from the "Attendance Agreement Form" included in the registration packet, unrestricted by the arbitration clause.[1]

Defendant AAUW-CA contends that the arbitration agreement does not lack mutuality because Plaintiffs received all of the benefit under the agreement and Defendant AAUW-CA  "shouldered all of the burden and risk."  (ECF No. 21 at 11).

_____

[1] The "Attendance Agreement Form" included in the packet of forms Defendant AAUW-CA requested Plaintiff Rosalind Solo to complete and return, contains a provision stating, "Parents could be charged $100/day for an unexcused early departure. Excused absences are very serious indeed and do not include family reunions, sports competitions, family vacations or homesickness.  The decision is up to the individual camp director."  (ECF No. 19 at 19).  Under the "Attendance Agreement Form," Defendant AAUW-CA could charge Plaintiffs for an unexcused early departure from camp.  In this case, campers did not pay to attend Tech Trek camp, but parents of campers could be required to pay up to a $700 penalty for unexcused early camp departure.

Defendant AAUW-CA contends that there was no reason to anticipate it would take legal action against participants of the camp or their parents where Defendant AAUW-CA provided cost-free attendance to camp.

"Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." *Kilgore*, 718 F.3d 1052, 1058 (quotation omitted). "The term [substantive unconscionability] focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Davis v. O'Melveny & Myers*, 458 F.3d 1066, 1075 (9th Cir. 2007) (quotations omitted), *overruled on other grounds by Kilgore v. KeyBank Nat'l Ass'n*, 673 F.3d 947, 960 (9th Cir. 2012). Substantive unconscionability "turns not only on a one-sided result, but also on an absence of a justification for it." *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 487 (1982) (quotation omitted). "[T]he standard for substantive unconscionability–the requisite degree of unfairness beyond merely a bad bargain–must be as rigorous and demanding for arbitration clauses as for any contract clause." *Sanchez*, 61 Cal.4th at 912.

"Where the party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserved for itself the ability to seek redress in either an arbitral or judicial forum, California courts have found a lack of mutuality supporting substantive unconscionability." *Negrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th Cir. 2006). An arbitration agreement will be found unconscionable and the court may "refuse to enforce the contract as a whole" if a lack of mutuality permeates the contract provision to such degree that "the court would have to . . . reform the contract, not through severance or restriction, but by augmenting it with additional terms." *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 788 (9th Cir. 2002)

The arbitration provision signed by Plaintiff Rosalind Solo contains the language "I agree," indicating that Plaintiffs are the only parties bound to arbitrate their legal claims. Under the terms of this agreement, Defendants could bring a lawsuit against campers or their parents in a judicial forum but Plaintiffs must arbitrate all claims

against Defendants.  Defendant AAUW-CA restricted the Plaintiffs, with inferior bargaining power, to arbitrate legal claims while "reserv[ing] for itself the ability to seek redress in either an arbitral or judicial forum."  *See Negrampa*, 469 F.3d at 1285. The lack of mutuality in the arbitration agreement supports a finding of substantive unconscionability.  *See id.*

Defendant AAUW-CA contends that it is reasonable that the arbitration agreement is drafted to only require arbitration of claims by campers because Defendant AAUW-CA did not anticipate claims against campers in connection with its offer of a free camp.  However, California courts have held that the likelihood that the party with superior bargaining power will bring claims against the party bound by the arbitration agreement is not a justification for a unilateral arbitration agreement.  *See Armendariz*, 24 Cal.4th at 121 ("The fact that it is unlikely an employer will bring claims against a particular type of employee is not, ultimately, a justification for a unilateral arbitration agreement.").  The lack of a reasonable justification for the unilateral contract, supports a finding of substantive unconscionability.  *Negrampa*, 469 F.3d at 1285; *see also A&M Produce Co.*, 135 Cal. App. 3d at 487 (holding that substantive unconscionability "turns not only on a one-sided result, but also on an absence of a justification for it"); *Zullo v. Superior Court*, 197 Cal. App. 4th 477, 485 (2011) ("If an employer does have a reasonable justification for a one-sided arrangement, the lack of mutuality would not be unconscionable.  But without such justification, we assume that it is).

The Court is unable to sever the one-sided nature of this arbitration agreement without simply rewriting the agreement.  *See Ferguson*, 298 F.3d at 788 (declining to sever the objectionable provisions of an arbitration agreement, "noting, if we did so, there would be virtually nothing of substance left of the contract.  Instead, we would need to rewrite those provisions according to what we believed was fair and equitable.") (quoting *Mercuro v. Superior Court*, 116 Cal.Rptr.2d 671, 684 (2002)).

### 2. Procedural Unconscionability

Plaintiffs contend that the arbitration agreement contained in the Release Form

is procedurally unconscionable because the Release Form was drafted by Defendant AAUW-CA and attendance at the camp was conditioned upon signing the agreement. Plaintiffs contend that the superior bargaining power held by Defendants, the standardization of the form, and the text language indicates that the arbitration agreement was not negotiable. Plaintiffs contend that the omission of any reference to the arbitration rules or reference to the arbitration forum establishes procedural unconscionability. Plaintiffs assert that the one-sentence arbitration agreement was unreasonably unfavorable to Plaintiff because it is silent as to which party would bear the costs of arbitration. Plaintiff Rosalind Solo attached a declaration to the opposition the motion to compel arbitration, stating that at the time her daughter was selected to attend Tech Trek camp, her income was approximately $3,150 per month and she is unable to afford the costs of arbitration. (ECF No. 17-1 ¶¶1, 10). Plaintiff Rosalind Solo stated in her declaration,

> I believed the arbitration clause appearing in the middle of the packet pertained to the several releases and permissions I was agreeing to which surround the arbitration clause. . . . I had no reason to believe that the arbitration clause pertained to possible future violations of federal or state anti-discrimination laws nowhere mentioned in the registration packet.

*Id.* ¶ 6. Plaintiffs assert that she was forced to sign the unfairly one-sided agreement because there were not other camps like Tech Trek for Plaintiff Devyn Solo to attend.

Defendant AAUW-CA asserts that Plaintiff Rosalind Solo did not attempt to ask any questions about or negotiate the terms of any provisions in the Release Form or take any other action which would indicate that Plaintiff Rosalind Solo was in an inferior bargaining position. Defendant AAUW-CA asserts that Plaintiff Rosalind Solo was given weeks to sign and return the paperwork and could have negotiated or sought out other market alternatives. Defendant AAUW-CA contends that it is of no consequence that the arbitration provision did not reference the arbitration rules to be applied.

"Procedural unconscionability focuses on the factors of surprise and oppression." *Kilgore*, 718 F.3d at 1059 (quotation omitted). "'Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful

1 choice,' while '[s]urprise involves the extent to which the supposedly agreed-upon

2 terms are hidden in a prolix printed form drafted by the party seeking to enforce them.'"

3 *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (quoting *Flores v.*

4 *Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)).

5     A contract "will be denied enforcement if, considered in its context, it is unduly

6 oppressive . . . ." *Armendariz*, 24 Cal. 4th at 113. Contracts of adhesion signed by a

7 weaker party in oppressive circumstances may contribute to a finding of procedural

8 unconscionability. *See Sanchez*, 61 Cal.4th at 915; *see also Higgens v. Superior Court*,

9 140 Cal. App. 4th 1238, 1248 (2006) ("a contract of adhesion is a standardized contract

10 that is imposed and drafted by the party of superior bargaining strength and relegates

11 to the other party only the opportunity to adhere to the contract or reject it").

12     In this case, the circumstances support an inference that signing the arbitration

13 agreement was a condition of attending Defendants' camp and that the absence of

14 alternative camps for Plaintiff Devyn Solo to attend shows a lack of meaningful choice

15 on the part of the Plaintiffs that supports a finding of procedural unconscionability. *See*

16 *Sanchez*, 61 Cal.4th at 910.[2] Plaintiff Rosalind Solo's failure to attempt to negotiate the

17 terms of the Release Form does not establish that the arbitration agreement was not

18 unconscionable. *See Sanchez*, 61 Cal.4th at 914 ("in the context of consumer contracts,

19 we have never required, as a prerequisite for finding procedural unconscionability, that

20 the complaining party show it tried to negotiate standardized contract provisions").

21     California courts have found that a degree of procedural unconscionability may

22 be found when an arbitration provision refers to arbitration rules, but a copy of those

23 rules are not provided to the individual. *See Zullo*, 197 Cal. App. 4th at 485 ("The

24 absence of the [American Arbitration Association] arbitration rules adds a bit to the

25 procedural unconscionability."). Provisions concerning arbitration costs can also

26

27     [2] While Defendant AAUW-CA asserts that attendance was not conditioned upon signing the arbitration agreement, Defendant AAUW-CA stated in its motion that, "insofar as Tech Trek was cost-free for Devyn and Rosalind, the notion that the

28 registration for the cost-free program was conditioned on assent to binding arbitration certainly seems logical and fair . . . ." (ECF No. 11-1 at 7-8).

contribute to the unconscionability of an arbitration agreement. *See Sanchez*, 61 Cal.4th at 917 ("[A]rbitration costs are so high that many people drop their complaints because they can't afford to pursue them, a recent study by Public Citizen found . . . . [A]ccess to the system may be greatly affected by the wealth of the consumer."). The availability of other marketplace alternatives for the goods, services, or employment governed by the contract is a factor that weighs against finding procedural unconscionability, but does not alone defeat unconscionability. *Nagrampa*, 469 F.3d at 1283.

The arbitration agreement in this case does not include any reference to arbitration rules or the arbitration forum. The agreement is silent as to who will bear the costs of arbitration. Defendant AAUW-CA drafted the agreement and failed to include terms that are material to ensuring the agreement is reasonably fair to both parties. Failure to reference any arbitration rules or include reference to costs in the arbitration supports a finding of procedural unconscionability. *See Zullo*, 197 Cal. App. 4th at 485; *Trivedi v. Curexo Technology Corp.*, 189 Cal. App. 4th 387, 393 (2010).

## V. Conclusion

The arbitration provision is conspicuous and was expressly signed by Plaintiff Rosalind Solo. The Court finds, however, that the arbitration agreement is procedurally unconscionable because the agreement was drafted by Defendant AAUW-CA, the party with stronger bargaining power, the agreement did not provide Plaintiffs with a meaningful choice, and the agreement did not reference the relevant arbitration rules or discuss costs. The Court also finds that the arbitration agreement is  substantively unconscionable because the agreement is unreasonably favorable to Defendant AAUW-CA and there is no justification for the overly one-sided nature of the agreement. *See Sanchez*, 61 Cal.4th at 911.

The Court concludes that in light of "the totality of the agreement's substantive terms as well as the circumstances of its formation," the terms of the arbitration agreement are "unreasonably favorable to the more powerful party." *See Sonic-Calabasas A, Inc.*, 57 Cal.4th at 1146; *see also Sanchez* 61 Cal.4th at 911. The Court

concludes that the arbitration agreement is unconscionable and the Court exercises its discretion to withhold its enforcement. *See Sonic-Calabasas A, Inc.*, 57 Cal.4th at 1146; *see also Sanchez* 61 Cal.4th at 910 ("procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability."). Defendant AAUW-CA's motion to compel arbitration is denied.

IT IS HEREBY ORDERED that the motion to compel arbitration (ECF No. 11) filed by Defendant AAUW-CA and joined by Defendant AAUW is denied.

DATED:  May 17, 2016

**WILLIAM Q. HAYES**
United States District Judge